UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EXECUTIVE JET  
MANAGEMENT, INC.,  
    Plaintiff,

vs.

LONGBOW ENTERPRISES, LLC, *et al.*,  
    Defendants.

Case No. 1:21-cv-74  
Litkovitz, M.J.

**ORDER**

This matter is before the Court on defendant Longbow Aviation, LLC ("Longbow Aviation")'s motion for partial judgment on the pleadings (Doc. 14), plaintiff Executive Jet Management, Inc. (EJM)'s response in opposition and counter-motion for partial judgment on the pleadings (Docs. 21, 22)[1], Longbow Aviation's reply memoranda (Docs. 31, 32), and EJM's reply memorandum (Doc. 34). This matter is also before the Court on Longbow Aviation's motion for leave to file a sur-reply (Doc. 35), EJM's response in opposition (Doc. 36), and Longbow Aviation's reply memorandum (Doc. 37). On October 15, 2021, the Court held oral argument on these motions. This matter is now ripe for disposition.

**I. Motion for Leave to File a Sur-reply**

Longbow Aviation seeks leave to file a sur-reply memorandum (Doc. 35) to address new arguments and new authorities that EJM allegedly presented in its reply in support of its counter-motion for partial judgment on the pleadings (Doc. 34). Longbow Aviation contends that EJM "argues for the first time that the pleadings prove each element to its breach of contract claim." (Doc. 35 at PAGEID 535; *see also* Doc. 37). Longbow Aviation argues that it is entitled to file a

---

[1] Docs. 21 and 22 are the same document. The Clerk of Court entered this as two separate events for docket management purposes as the filing contained both a response and a motion. Because the documents are identical, the Court refers to Doc. 21 throughout this Order when referencing either plaintiff's reply in opposition or plaintiff's counter-motion for judgment on the pleadings.

sur-reply "to address the new factual disputes raised in EJM's Reply." (Doc. 35 at PAGEID 532). EJM argues in opposition that the Court should deny Longbow Aviation's motion for leave to file a sur-reply. (Doc. 36).

Local Civil Rule 7.2(a) provides that only supporting, opposing, and reply memoranda may be filed "except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Local Rule 7.2(a), however, does not define "good cause" for filing any additional memoranda. *Comtide Holdings, LLC v. Booth Creek Mgt. Corp.*, No. 2:07-cv-1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010). Generally, "good cause" exists where the reply brief raises new grounds that were not included in the movant's initial motion. *Id*. (citing as examples *Power Mktg. Direct v. Moy*, No. 2:08-cv-826, 2008 WL 4849289 (S.D. Ohio Nov. 6, 2008); *cf. White v. Honda of Am. Mfg., Inc.*, 191 F. Supp. 2d 933, 944 (S.D. Ohio 2002) (finding the mere fact that a sur-reply might be "helpful" is not enough to justify its filing)). *See also Laws v. Stevens Transp., Inc.*, No. 2:12-cv-544, 2013 WL 4510395, at *2 (S.D. Ohio Aug. 23, 2013).

The Court finds that "good cause" exists to allow Longbow Aviation to file its sur-reply because EJM's reply (Doc. 34) arguably raises new grounds and arguments supporting its breach of contract claim that were not included in its initial filing. Longbow Aviation's motion for leave to file a sur-reply (Doc. 35) is therefore **GRANTED**. The Court **DIRECTS** the Clerk to file Doc. 35-2, Exhibit B, Sur-Reply, on the docket of the Court.

## II. Factual Background

EJM is an Ohio corporation that provides aircraft management and charter services of privately owned aircraft. Longbow Aviation is the owner of a Ratheon Hawker 800XP aircraft ("the Aircraft"). (Docs. 1-1, 7, 27). On July 26, 2011, defendant Longbow Enterprises, LLC ("Longbow Enterprises") and Longbow Aviation entered into separate agreements with EJM

whereby defendants purchased management and charter services for the Aircraft.[2] (*Id*.; Docs. 26 and 27). Under the terms of the agreements, defendants separately agreed to pay EJM a monthly management fee for its general management of the Aircraft and other services.[3] (*Id*.). In addition to management services, the agreement between EJM and Longbow Aviation (the "Aviation Agreement") provided a leasing arrangement whereby EJM would lease the Aircraft from Longbow Aviation for third-party charter aircraft services when the Aircraft was not in use by defendants, "thereby generating lease payments to [Longbow Aviation] for its financial benefit." (*Id*.). The Aviation Agreement between EJM and Longbow Aviation is the relevant contract at issue in the cross-motions for judgment on the pleadings.

EJM's complaint alleges the following: In 2015, the Ohio Department of Taxation ("ODT") conducted an audit of EJM's records regarding EJM's lease of the Aircraft from Longbow Aviation for the period of July 1, 2011 and March 31, 2015 (the "audit period"). (Doc. 4, ¶ 38). ODT determined that Longbow Aviation's lease of the Aircraft to EJM was a transaction subject to the sales tax levied under Ohio Rev. Code § 5739.02 and assessed $158,381.48 in taxes for the relevant time period.[4] (*Id*., ¶¶ 39, 41). The complaint alleges that Longbow Aviation had failed to ascertain, report and remit the required sales taxes on its lease of the Aircraft to EJM during the audit period as required by Section 5.4(f) of the Aviation Agreement. (*Id*., ¶ 40). EJM alleges that as a result of Longbow Aviation's failure to report and remit the audit amount, EJM, as the user of the Aircraft, was required to pay the audit amount of taxes. (*Id*., ¶ 42). EJM then subsequently invoiced Longbow Aviation for this amount, but

---

[2] Doc. 27 is the aircraft management agreement between EJM and Longbow Aviation, and Doc. 26 is the aircraft management agreement between EJM and defendant Longbow Enterprises. Both documents were filed under seal on the docket of the Court.
[3] Longbow Enterprises is a lessee of the Aircraft by agreement with Longbow Aviation. (Doc. 1-1 at PAGEID 9; Doc. 14 at PAGEID 132).
[4] The Court notes that the 2015 ODT audit is not in the record and was not offered as an exhibit by either party.

Longbow Aviation refused to pay any portion of the audit amount. (*Id*., ¶¶ 43, 46). EJM alleges that Longbow Aviation breached the Aviation Agreement "by failing to ascertain, report and remit sales taxes due on its lease of the Aircraft to EJM during the Audit Period." (*Id*., ¶ 49). EJM filed suit, alleging, *inter alia*, claims for breach of contract against Longbow Aviation (Count III) and unjust enrichment against Longbow Enterprises (Count II) and against Longbow Aviation (Count V).

Longbow Aviation counterclaimed, alleging that EJM was required to pay sales tax on the Aircraft for the third party flights chartered by EJM. (Doc. 7, PAGEID 96, ¶ 20). Longbow Aviation alleges that EJM failed to pay the audit amount of the sales tax "arising from its sale and performance of charter activities with the Aircraft. . . ." (*Id.*, PAGEID 96, ¶ 24). The counterclaim alleges that during the audit period, EJM paid Longbow Aviation $2,635 for each hour that EJM used the Aircraft in its charter operations and did not withhold any sales tax from Longbow Aviation's monthly charter revenue. (*Id.*, PAGEID 97, ¶¶ 30-31). After the audit period, EJM increased the hourly rate it paid Longbow Aviation to $2,820 per hour for use of the Aircraft, withheld sales tax from Longbow Aviation's charter revenue each month, and paid the sales tax to the ODT. (*Id*., PAGEID 97, ¶ 33). The sales tax amount withheld by EJM from the increased hourly rate resulted in an effective hourly rate of $2,635 for leasing the Aircraft. (*Id*., PAGEID 97, ¶ 34). The counterclaim alleges that the Aviation Agreement does not require Longbow Aviation to pay sales tax under § 9(f) of the Agreement. (*Id.*, PAGEID 98, ¶ 37). As it relates to the instant cross-motions for judgment on the pleadings, Longbow Aviation alleges a claim for declaratory judgment that EJM is responsible for paying the $158,381.48 in sales tax assessed by the ODT. (*Id.*, PAGEID 102-103, ¶¶ 71-83). Longbow also seeks judgment on EJM's unjust enrichment claim.

**III. Standard of review**

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). *See also Oro Cap. Advisors, LLC v. Borror Constr. Co., LLC*, No. 2:19-cv-5087, 2021 WL 2457989, at *6 (S.D. Ohio June 16, 2021). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

In ruling on a motion for judgment on the pleadings, the Court considers the pleadings, which includes the complaint, answer, and any written instruments attached as exhibits. *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016) (citing Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a)). *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). *See also Pac. Space Design Corp. v. PNC Equip. Fin., LLC*, No. 1:13-cv-00460, 2014 WL 6603288, at *4 (S.D. Ohio Nov. 19, 2014) (Dlott, J.) (considering lease agreement in 12(c) motion where both parties agreed that an agreement existed). Generally, if it is inconsistent with the allegations in the complaint or counterclaim, the exhibit controls. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012).

**IV. Motions for judgment on the pleading on EJM's breach of contract claim/Longbow Aviation's declaratory judgment claim**

    **A. Law on contract interpretation**

In cases like this where federal jurisdiction is based on diversity of citizenship, the Court

5

applies the substantive law of the state in which the district court sits according to the decisions of the state's highest court. *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020) (citing *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013)). In addition, Section 15.10 of the Agreement between the parties requires it to be interpreted under Ohio law. (Doc. 27, Section 15.10; Doc. 21 at PAGEID 337). "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (citing cases). Where a contract is clear and unambiguous, "a court may not resort to construction of that language." *Waste Mgmt., Inc. v. Rice Danis Inds. Corp.*, 257 F. Supp. 2d 1076, 1083 (S.D. Ohio 2003) (citing cases).

The court's role in interpreting a contract is to "give effect to the intent of the parties." *Goodyear Tire and Rubber Co. v. Lockheed Martin Corp.*, 622 F. App'x 494, 497 (6th Cir. 2015) (citing *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011)). The court reads the contract as a whole and interprets the words of the contract "according to their plain meaning." *Richelson v. Liberty Ins. Corp.*, 796 F. App'x 277, 281 (6th Cir. 2020) (quoting *Boone Coleman Constr., Inc. v. Piketon*, 50 N.E.3d 502, 515 (Ohio 2016)).

Contractual language is ambiguous where its meaning cannot be determined from the four corners of the contract or where it can reasonably be interpreted in more than one manner. *Savedoff*, 524 F.3d at 763. "When both parties offer 'plausible interpretations of the agreement drawn from the contractual language itself [this] demonstrates that the provision is ambiguous.'" *Salerno v. Steel Plate, LLC*, No. 5:20-cv-1598, 2021 WL 1061939, at *5 (N.D. Ohio Mar. 19, 2021) (quoting *Int'l Union UAW Local 91 v. Park-Ohio Indus., Inc.*, 876 F.2d 894, at *6 (6th Cir. 1989) (table decision)). Only if the contract is ambiguous can the court consider extrinsic

6

evidence to ascertain the parties' intent. *Cal. Fitness I, Inc. v. Lifestyle Fam. Fitness, Inc.*, 433 F. App'x 329, 341 (6th Cir. 2011) (citing *Allason v. Gailey*, 939 N.E.2d 206, 212 (Ohio Ct. App. 2010)). The court may consider extrinsic evidence "to interpret, but not to contradict, the express (ambiguous) language." *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 680 (6th Cir. 2011) (citing Ohio cases).

### B. Interpretation of the Aviation Agreement

As an initial matter, the Court will not decide whether either party breached the Aviation Agreement at this juncture. To the extent EJM seeks judgment on the breach of contract issue, for the reasons discussed at the hearing, resolution on that issue would be premature.[5] The only issue before the Court is whether the Aviation Agreement specifies which party to the agreement is responsible for the sales taxes assessed by the 2015 ODT audit. Each party points to a separate provision of the Aviation Agreement—Section 5.4(f) and Section 9.1(f)—in support of its respective claim that the opposing party is responsible for the sales tax.

EJM argues that Section 5.4(f) of the Aviation Agreement imposes an affirmative duty on Longbow Aviation to pay any taxes due on the lease of its Aircraft to EJM. (Doc. 21). EJM explains that there are two separate transactions when the Aircraft was used for charter services: (1) a lease of the Aircraft from Longbow Aviation to EJM, and (2) EJM's charter of the Aircraft to a third party. EJM states that the first transaction is covered by Section 5.4(f), under which Longbow Aviation is responsible for the taxes, and the second transaction is governed by Section 9.1(f), which is the responsibility of EJM. (*Id.*, PAGEID 338). EJM maintains that the 2015 ODT audit tax amount, which was assessed on the first transaction, i.e., the lease payments to

---

[5] As explained *infra*, Longbow Aviation disputes EJM's allegation that Longbow Aviation "failed to ascertain, report and remit the required sales taxes on its lease of the Aircraft to EJM during the Audit Period as required by Section 5.4(f) of the Aviation Agreement." (Doc. 4, ¶ 40; Doc. 7, PAGEID 86, ¶ 40).

Longbow Aviation and not EJM's charter revenue, is the responsibility of Longbow Aviation under §5.4(f).

The relevant provisions of Section 5 of the Aviation Agreement provide:

### Section 5-Dry Lease[6] of Aircraft to EJM

**5.1     Applicability.** If Customer [Longbow Aviation] has elected under Item 6 of the General Schedule for EJM to be able to take possession of the Aircraft from time to time so that EJM may use the Aircraft in performance of charter air transportation services under Part 135, this Section 5 sets forth how the lease of the Aircraft to EJM will be handled.

\* \* \*

**5.4     Lease Payments.**

\* \* \*

   f.     Potential Taxes on the Leasehold.

Customer [Longbow Aviation] shall be solely responsible for ascertaining the applicability and amount of any taxes that might apply to its lease of the Aircraft to EJM, as well as for collecting, reporting, and remitting such taxes. EJM agrees to pay Customer [Longbow Aviation] such tax as the Customer [Longbow Aviation] represents in writing to EJM is due, provided that Customer [Longbow Aviation] promptly notifies EJM of such imposition and provides reasonable documentation to EJM in support of such imposition. In the event that such a tax applies, the Hourly Lease Rate for the Aircraft, specified in Item 8.e of the General Schedule, shall be calculated on a per flight basis with a different Hourly Rental for the flight hours subject to the tax than the flight hours not subject to the tax. The Hourly Lease Rate for the Aircraft, specified in Item 8.e of the General Schedule, for flight hours subject to the tax will be reduced by the amount of the tax due. For clarification, in no event will the Hourly Lease Rate plus any applicable tax exceed the amount specified in Items 8.e.1, 8.e.2, or 8.e.3 of the General Schedule, as applicable to the flight in question. Other than the tax specified in this Section 5.4.f, EJM shall have no obligation to pay any tax, including but not limited to lease, property, ad valorem, gross receipts, income, or franchise tax imposed by any governmental or taxing authority on the lease of the Aircraft.

\* \* \*

---

[6] Under a "dry lease," the "lessor furnishes an aircraft—but not an operator—for use by a lessee." *Pi In The Sky, L.L.C. v. Testa*, 119 N.E.3d 417, 420 (Ohio 2018). In contrast, a "wet lease" is defined as "any leasing arrangement whereby a person agrees to provide an entire aircraft and at least one crewmember." 14 C.F.R. § 110.2.

(Doc. 27, Section 5.4(f)). EJM contends that "[t]he opening sentence of Section 5.4(f) of the Aviation Agreement definitively resolves the question before the Court regarding responsibility for taxes on the lease of the Aircraft from Longbow Aviation to EJM when it states, 'Customer [Longbow Aviation] shall be solely responsible for ascertaining the applicability and amount of any taxes that might apply to its lease of the Aircraft to EJM, as well as for collecting, reporting, and remitting such taxes.'" (Doc. 21, PAGEID 337).

In contrast, Longbow Aviation argues that Section 9.1 of the Aviation Agreement controls the tax question in this case. (Doc. 14, PAGEID 134). Longbow Aviation contends that under Section 9.1(f) of the Aviation Agreement, EJM is required to collect and remit every tax imposed by any governmental authority on EJM's sale and performance of all charter operations while using the Aircraft. (*Id.*, PAGEID 139; Doc. 27, Section 9.1(f)). Section 9 of the Aviation Agreement states:

<u>**Section 9 – Representations, Warranties, and Covenants**</u>

**9.1** **Representations, Warranties, and Covenants of EJM.** EJM represents, warrants, and covenants that:

    f.    It shall collect and remit every tax imposed by any governmental authority on EJM's sale and performance of charter operations using the aircraft.

(Doc. 27, Section 9.1(f)). Longbow Aviation alleges that sales and use tax accrue only when EJM sells or performs charter operations, and therefore these taxes are EJM's responsibility under Section 9.1(f). In other words, the taxes assessed by the 2015 ODT audit accrued only when EJM sold and performed charter operations using the Aircraft. In the absence of any such charter operations, there are no sales taxes assessed. (Doc. 7, PAGEID 102-03; Doc. 14, PAGEID 133, 139; Doc. 31, PAGEID 498-99; Doc. 32, PAGEID 511).

Longbow Aviation acknowledges that "taxes levied on the Aircraft itself – those that

accrue outside of EJM's exclusive responsibility to invoice customers and remit payments – are Longbow Aviation's responsibility under Section 5.4(f)." (Doc. 31, PAGEID 499). These taxes accrue regardless of EJM's charter operations and include "lease, property, ad valorem, gross receipts, income, or franchise tax imposed by any governmental or taxing authority on the lease of the Aircraft" as set forth in the last sentence of Section 5.4(f). Longbow Aviation alleges that "the only taxes assessed (and at issue in this case) were related to the chartering of the Aircraft, which were the responsibility of EJM under Section 9.1(f)." (*Id.*, PAGEID 497). Longbow Aviation states that although it "was responsible for 'any taxes that might apply to the lease of the Aircraft to EJM' (Aviation Agreement, PAGEID # 440, § 5.4(f)), a tax that applied to every charter payment does not fit the parties' expressed definition of what constitutes a tax on the lease of the Aircraft." (*Id.*, PAGEID 501). In other words, sales tax on the lease of the Aircraft from Longbow Aviation to EJM does not amount to a "tax[] that might apply to its [Longbow Aviation's] lease of the Aircraft to EJM." (Doc. 27, Section 5.4(f)).

The Court is not persuaded by either party's reading of the relevant provisions of the Aviation Agreement. The Court disagrees with Longbow Aviation that "a tax on the lease of the Aircraft" from Longbow Aviation to EJM under Section 5.4(f) necessarily excludes sales taxes associated with leasing the Aircraft for EJM's charter operations. Longbow Aviation's argument assumes that the ODT assessed sales tax on the charter services provided by EJM. However, EJM's complaint alleges that "[ODT] determined that Longbow Aviation's *lease* of the Aircraft to EJM was a transaction subject to the sales tax levied by Ohio Revised Code 5739.02." (Doc. 4, ¶ 39) (emphasis added). For purposes of a motion for judgment on the pleadings, the Court must take this allegation as true. *See Fritz*, 592 F.3d at 722.

In addition, the Aviation Agreement, when read as a whole, contemplates two separate

10

and potentially taxable transactions: the lease transaction from Longbow Aviation to EJM and EJM's provision of charter services to third parties. Neither party disputes that EJM is responsible for remitting sales tax to the appropriate taxing authority when it collects sales tax paid by and received from third party customers who charter the Aircraft through EJM. However, the predecessor transaction to EJM's charter transportation services is the initial lease from Longbow Aviation to EJM, which generates "lease payments to the Customer [Longbow Aviation] for its financial benefit" under Section 1 of the Aviation Agreement. (Doc. 27, § 1). If EJM elects to take possession of the Aircraft to use in its performance of charter air transportation services, "Section 5 sets forth how the lease of the Aircraft to EJM will be handled." (Doc. 27, § 5.1). Section 5.4(f) sets forth the parties' respective responsibilities for any potential taxes on the leasehold, including sales tax under Ohio Rev. Code § 5739.02 on the lease of the Aircraft from Longbow Aviation to EJM.

The Court is not persuaded by Longbow Aviation's argument at the hearing in this matter that the sales tax under Ohio Rev. Code § 5739.02 does not apply to the lease in this case because it is not a lease with a fixed term of more than thirty days or an indefinite term with a minimum period of more than thirty days pursuant to subsection (A)(2). *See* Ohio Rev. Code § 5739.02(A)(2). There is a presumption that all sales made in the State of Ohio are subject to an excise tax until the contrary is established. *See Shugarman Surgical Supply, Inc. v. Zaino*, 777 N.E.2d 244, 246 (Ohio 2002) (citing Ohio Rev. Code § 5739.02). The definition of "sale" includes "[a]ll transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted." Ohio Rev. Code § 5739.01(B)(1). The lease of the Aircraft from Longbow Aviation to EJM, whereby EJM takes "possession of the Aircraft from time to time so that EJM may use the

11

Aircraft in the performance of charter air transportation services" (Doc. 27, Section 5.1, Section 6.1), falls squarely within this definition of a "sale" that is subject to an excise tax. Subsection (A)(2) of § 5739.02, cited by Longbow Aviation, specifies how sales tax is to be calculated and when sales tax is to be collected under the circumstance of a lease of more than thirty days or a lease of an indefinite term with a minimum period of more than thirty days. It does not limit excise taxes to only lease transactions meeting those time parameters. Longbow Aviation has not presented any authority establishing that leases for a shorter time period are not "sales" under § 5739.01 subject to an excise tax under § 5739.02.

On the other hand, the Court disagrees with EJM that the "clear and unambiguous" first sentence of section 5.4(f) squarely places on Longbow Aviation the "responsibility for taxes on the lease of the Aircraft from Longbow Aviation to EJM." (Doc. 21 at PAGEID 337). Rather, when read as a whole, Section 5.4(f) places on Longbow Aviation the responsibility for ascertaining the types and amount of taxes that are due on the dry lease of the Aircraft to EJM for its charter operations and the responsibility for paying such taxes on EJM provided certain duties are met by Longbow Aviation.

Sentence one of Section 5.4(f) states, "Customer [Longbow Aviation] shall be solely responsible for ascertaining the applicability and amount of any taxes that might apply to its lease of the Aircraft to EJM, as well as for collecting, reporting, and remitting such taxes." (Doc. 27, Section 5.4(f)). When taken in isolation, the first sentence of Section 5.4(f) arguably supports EJM's interpretation. However, this sentence must be read in conjunction with the remaining sentences of Section 5.4(f), which specify the respective duties of the parties regarding "potential taxes on the leasehold." The taxes at issue are those "that might apply to [Longbow Aviation's] lease of the Aircraft to EJM." (*Id*., first sentence). Longbow Aviation is

12

responsible for "ascertaining the applicability and amount of any taxes" and "for collecting, reporting, and remitting such taxes." (*Id*.). The second sentence of Section 5.4(f) states, "EJM agrees to *pay* Customer [Longbow Aviation] *such tax* as the Customer [Longbow Aviation] represents in writing to EJM is due, provided that Customer [Longbow Aviation] promptly notifies EJM of such imposition and provides reasonable documentation to EJM in support of such imposition." (*Id.*, second sentence) (emphasis added). Thus, while Longbow Aviation is responsible for ascertaining what tax is due and for collecting and remitting such tax on its lease of the Aircraft to EJM, EJM is responsible for *paying* "such tax" provided Longbow Aviation: (1) promptly notifies EJM of such imposition, and (2) provides reasonable documentation to EJM in support of such imposition. (*Id*.).

The Court presumes the intent of the parties lies in the words selected by the parties. As used in the Aviation Agreement, the terms "collecting, reporting, and remitting" (Section 5.4(f), first sentence) are distinct from the term "pay[ing]" (Section 5.4(f), second sentence). The taxing scheme set forth in Section 5.4(f) is not unlike a rental car transaction. A rental car company that leases or rents an automobile to a customer will ascertain, collect and remit sales and other applicable taxes to the appropriate governmental authority. However, the customer who rents the vehicle actually "pays" the taxes, albeit to the rental car company (as the tax collector) who then remits the taxes to the government. If the parties in this case intended Longbow Aviation to be responsible for *paying* "such taxes," i.e., the taxes ascertained to be due when Longbow Aviation leases the Aircraft to EJM, the second sentence specifying that EJM would "pay Customer such tax" would be rendered meaningless.

The remaining provisions of Section 5.4(f) support the interpretation that EJM is responsible for paying sales tax on the lease transaction provided Longbow Aviation meets its

13

other obligations under the Agreement. The third and fourth sentences provide that "in the event such tax applies" the hourly lease rate is adjusted for in flight hours subject to the tax and flight hours not subject to the tax, i.e., the hourly lease rate for flight hours subject to the tax will be reduced by the amount of the tax due. The fifth sentence of Section 5.4(f) states, "For clarification, in no event will the Hourly Lease Rate plus any applicable tax exceed the amount specified in Items 8.e.1, 8.e.2, or 8.e.3 of the General Schedule, as applicable to the flight in question." In other words, any sales tax ascertained by Longbow Aviation to apply to its lease of the Aircraft should be negotiated into the hourly rate of the lease. This is what happened after the ODT assessed sales tax in this case.

Following the 2015 ODT audit, the parties executed an Amended Aviation Agreement in 2016 to increase the hourly rate paid by EJM to Longbow Aviation from $2,635 to $2,820. (Doc. 27, PAGEID 459). EJM withheld sales tax from the increased hourly rate and paid sales tax to the ODT, which resulted in Longbow Aviation still receiving $2,635 per hour each time EJM chartered the Aircraft after the Audit Period. (Doc. 14, PAGEID 135, citing Counterclaim, PAGEID 97, ¶¶ 33-34; EJM's Answer, PAGEID 114, ¶¶ 34-35). The resulting $2,635 hourly amount received by Longbow Aviation is the identical rate contracted for in the original Aviation Agreement for "each hour that EJM used the Aircraft in its charter operations." (Doc. 7 at PAGEID 97; Doc. 27 at PAGEID 430). The parties' performance after the audit supports the Court's interpretation that EJM is responsible for paying sales tax on the lease of the Aircraft from Longbow Aviation to EJM, provided Longbow Aviation complies with its obligations under Section 5.4(f) of the Aviation Agreement.

Finally, the last sentence of Section 5.4(f) states, "*Other than the tax specified in this Section 5.4.f, EJM shall have no obligation to pay any tax*, including but not limited to lease,

14

property, ad valorem, gross receipts, income, or franchise tax imposed by any governmental or taxing authority on the lease of the Aircraft." (Doc. 27, Section 5.4(f), sixth sentence) (emphasis added). The plain language of this sentence contemplates some payment of taxes by EJM when the Aircraft is leased from Longbow Aviation to EJM. Accepting as true EJM's allegation that the "DOT determined that Longbow Aviation's lease of the Aircraft to EJM was a transaction subject to the sales tax levied by Ohio Revised Code 5739.02" as the Court must on a motion for judgment on the pleadings, Section 5.4(f) directs that the assessment and payment of such tax be handled in accordance with the provisions set forth therein.

At the hearing on this matter, Longbow Aviation argued that it was critical that EJM characterized the tax at issue as a "use" tax under Ohio Rev. Code § 5741.02(A) in its complaint (citing the complaint at ¶ 42), and not a "lease" tax under Ohio Rev. Code § 5739.02. Longbow Aviation stated that a "use" tax is one that clearly falls under Section 9(f) of the Aviation Agreement, and, in contrast, Section 5.4(f) of the Agreement applies only to "lease" taxes and specifies how such taxes should be handled.

The Court is not persuaded that Section 5.4(f) applies only to "lease" taxes. The last sentence of Section 5.4(f) specifies the types of taxes "EJM shall have *no* obligation to pay," including a "*lease* . . . tax imposed by any governmental or taxing authority." (Doc. 27, Section 5.4(f), sentence six). If the parties' respective obligations under the first five sentences of Section 5.4(f) applied only to "lease" taxes, as Longbow Aviation argues, then the use of the term "lease" tax in the last sentence would be rendered inconsistent and meaningless. *See Wohl v. Swinney*, 888 N.E.2d 1062, 1066 (Ohio 2008) ("When interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary.") (citations omitted).

15

Whether or not the parties complied with their respective responsibilities (e.g., "EJM agrees to pay Customer [Longbow Aviation] such tax as the Customer [Longbow Aviation] represents in writing to EJM is due, *provided that Customer [Longbow Aviation] promptly notifies EJM of such imposition and provides reasonable documentation to EJM in support of such imposition*.") is not the subject of the motions for judgment on the pleadings.  While EJM's complaint alleges that Longbow Aviation failed to ascertain, report and remit the required sales taxes on its lease of the Aircraft to EJM during the audit period as required by Section 5.4(f) of the Aviation Agreement, Longbow Aviation has specifically denied this allegation in its Answer.  Such issues of fact cannot be resolved on a motion for judgment on the pleadings.  Therefore, the Court denies Longbow Aviation's motion for partial judgment on the pleadings (Doc. 14) and EJM's counter-motion for partial judgment on the pleadings (Doc. 21).

**V.  Motion for judgment on the pleadings on EJM's unjust enrichment claims**

EJM's unjust enrichment claim in Count II of its complaint concerns EJM's benefit it allegedly conferred "upon Longbow Enterprises by providing goods and services to Longbow Enterprises[.]"  (Doc. 4, PAGEID 66, ¶ 34).  Count V of EMJ's complaint alleges that "EJM conferred a benefit upon Longbow Aviation by paying taxes owed by Longbow Aviation and providing goods and services to Longbow Aviation."  (*Id*., PAGEID 70, ¶ 61).

Longbow Aviation moves for partial judgment on the pleadings on EJM's claims for unjust enrichment in Counts II and V of EJM's complaint.  Longbow Aviation argues that "EJM's unjust enrichment claims are expressly governed by its separate agreements with Defendants, and it is undisputed that the parties' respective agreements are valid and enforceable."  (Doc. 14, PAGEID 131).  EJM argues that its complaint directly alleges all of the required elements for unjust enrichment, and its Counts are properly pled.  (Doc. 21, PAGEID

341-42).

To state an unjust enrichment claim under Ohio law, a complaint must allege: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *In re Whirlpool Corp. Front–Loading Washer Products Liability Litig.*, 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)). However, "[u]nder Ohio law, a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) (citing *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009)). See also *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 181 (6th Cir. 1996) ("Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for . . . unjust enrichment."). It is well-established that "[a] claim for unjust enrichment may be pled in the alternative, however, when the existence of an express contract is in dispute and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 699 (S.D. Ohio 2012). See also *Right-Now Recycling, Inc. v. Ford Motor Credit Co.*, No. 1:11-cv-364, 2015 WL 1197671, at *31 (S.D. Ohio Mar. 16, 2015).

It is undisputed that there exists a valid and enforceable contract between the parties (Doc. 4, ¶¶ 29, 47, 56; Doc. 7, PAGEID 94, 103; Doc. 14, PAGEID 131, 133-34, 136, 144; Doc. 21, PAGEID 342-43; Doc. 31, PAGEID 504-05; Doc. 34, PAGEID 527), and neither party alleges that fraud, bad faith, or illegality are present in this matter.

Further, the benefit that EJM alleges that it conferred on defendants, and the payment to

17

which EJM claims it is entitled to in Counts II and V of its complaint, are exclusively governed by the respective contracts entered into by the parties. That is, EJM's unjust enrichment claims are based upon the benefit it allegedly conferred to defendants by providing defendants with goods and services. Specifically, in Count II of its complaint, EJM alleges that it "conferred a benefit upon Longbow Enterprises by providing goods and services to Longbow Enterprises as detailed on Exhibit C." (Doc. 4, ¶ 34). EJM explained that "Exhibit C contained charges for services rendered by EJM to Longbow Enterprises *under the Enterprises Agreement* including, but not limited to, costs for crew serving the Aircraft for flights by Longbow Enterprises." (*Id*., ¶ 25) (emphasis added). In Count V of its complaint, EJM alleges that it "conferred a benefit upon Longbow Aviation by paying taxes owed by Longbow Aviation and providing goods and services to Longbow Aviation as detailed on Exhibits D and E." (*Id*., ¶ 61). Exhibit D was an "invoice for amounts due under the Aviation Agreement including the Audit Amount" and Exhibit E "contained charges for services rendered by EJM to Longbow Aviation *under the Aviation Agreement* including, but not limited to, Aircraft maintenance costs, fuel costs and costs for crew serving the Aircraft for flights by Longbow Aviation." (*Id*., ¶¶ 43, 53) (emphasis added). Because the Aviation Agreements are valid and express contracts that govern the subject matter of EJM's claims for unjust enrichment and Longbow Aviation does not dispute the existence of these agreements, Ohio's general rule applies and forecloses EJM from proceeding with its claims for unjust enrichment.

Accordingly, the Court **GRANTS IN PART** Longbow Aviation's motion for partial judgment on the pleadings on EJM's claims for unjust enrichment in Counts II and V of EJM's complaint. EJM's second and fifth causes of action for unjust enrichment are therefore **DISMISSED**.

**IT IS THEREFORE ORDERED THAT:**

1. Longbow Aviation's motion for partial judgment on the pleadings (Doc. 14) is **DENIED** to the extent Longbow Aviation requests a declaratory judgment that the Aviation Agreement imposes the obligation to pay the disputed taxes on EJM.

2. EJM's counter-motion for partial judgment on the pleadings (Doc. 21) is **DENIED**.

3. Longbow Aviation's motion for partial judgment on the pleadings on EJM's unjust enrichment claims contained in Counts II and V of its complaint is **GRANTED**.

_____
Karen L. Litkovitz
Chief United States Magistrate Judge